UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Cou··
Southern District of Texas
FILED

APR 2 0 2000

MICHAEL N. MILBY  CLERK

| | | |
|---|---|---|
| CATRINA VALADEZ, | § | |
| ALMA AVILA AND | § | |
| ESMERALDA CARRIZALES | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. C-00-101 |
| | § | |
| CITY OF SAN DIEGO, | § | |
| OFFICER BRENDA DE LEON & | § | |
| OFFICER ANDREW DE LEON | § | |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

CATRINA VALDEZ, ALMA AVILA and ESMERALDA CARRIZALES hereinafter referred to as Plaintiffs, complain of CITY OF SAN DIEGO, OFFICER BRENDA DE LEON and OFFICER ANDREW DE LEON, hereinafter referred to as Defendants, and for cause of action would show the following:

I.

Discovery in this case is intended to be conducted under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

Plaintiffs CATRINA VALDEZ, ALMA AVILA and ESMERALDA CARRIZALES are individuals residing in Duval County, Texas.

Defendant OFFICER BRENDA DE LEON is an individual and employee of defendant CITY OF SAN DIEGO residing in Duval County, Texas and no service is necessary as Defendant has answered herein.   Defendant is being sued as both an individual and as an employee of the CITY OF SAN DIEGO.

1

Defendant OFFICER ANDREW DE LEON is an individual and employee of defendant CITY OF SAN DIEGO residing in Duval County, Texas and no service is necessary as Defendant has answered herein. Defendant is being sued as both an individual and as an employee of the CITY OF SAN DIEGO.

Defendant CITY OF SAN DIEGO is a home rule municipality and no services is necessary as Defendant has answered herein.

Venue is mandatory in Duval County, Texas pursuant to C.P.R.C. Section 101.102(a).

All conditions precedent to the filing of this suit have been met.

II.

On November 4, 1999 at approximately 2:15 P.M., Officer Brenda De Leon of the City of San Diego Police Department was dispatched to 505 W. Dix in that city in reference to a "domestic disturbance". Upon arrival, Officer De Leon was informed by Ruben James Valadez that "his soon to be ex-wife" had allegedly "broken into his home" and "tore up all his clothes and underwear and put some clothes in the kitchen sink with bleach all over them." Officer De Leon entered the parties' residence and stated in her offense report (Case # 99-0651) that she saw "Mr. Valdez's clothes and underwear cut up and thrown all over the house." Officer De Leon was informed by Mr. Valdez that "Mrs. Valadez had a set of keys to his home and that he wanted them back." Officer De Leon was further informed by Mr. Valadez that "he had put all Mrs. Valadez's things outside the residence" purportedly at "Mrs. Valadez's request": "so she could take them". Mr. Valadez, according to the offense report, further informed Officer De Leon that "Mrs. Valadez had stolen over 100 compact disks (CD's) and broken all of [his?] cologne bottles."

It is apparent from the Offense Report that Officer De Leon did not witness, as it occurred,

2

any of the conduct complained of by Mr. Valadez. It is also apparent that the complainant was the spouse of Mrs. Valadez, that Mrs. Valadez had resided with Mr. Valadez at 505 W. Dix and that not only was this the community residence but that all property therein was presumptively community. It is apparent from the Offense Report that this "domestic disturbance" was civil in nature in that it involved complaints which could only be resolved in a suit for dissolution of the marriage and for the entry and enforcement of orders regarding the protection, preservation and division of the community estate. The State of Texas does not recognize the status of "soon to be ex-wife". Under the Texas Family Code parties are either married or divorced and while they continue to be married they continue to acquire community property. There is no reference in the report to temporary orders awarding one party use of the residence or any particular items of community property. The entry and enforcement of temporary orders in District Court is the appropriate manner for the resolution of a "domestic disturbance" under these circumstances. From the facts and circumstances related to her by the complainant Officer De Leon knew or should have known that this was a civil dispute. Despite that fact, "after taking all of Mr. Valadez's information" she "went to pick up Officer Andy De Leon to assist me as a back up unit" to arrest the other party to that civil dispute: Mrs. Catrina Valadez.

### III.

Officer Brenda De Leon and Officer Andy De Leon proceeded to 702 E. Palacios, the residence of Esmeralda Carrizales: the mother of Mrs. Valdez. Upon arriving at the home they told Alma Avila that they wanted to speak to Catrina Valadez. Mrs. Valadez, walked outside to the front yard. The Officer then informed Mrs. Valadez that they wanted to ask her a "few questions". Mrs. Valadez exercised her right to remain silent and refused to answer any questions. She was then

informed that she was being arrested for disorderly conduct by language.

It is apparent from the Offense Report that the Officers did not obtain a warrant to search the home of Mrs. Carrizales or a warrant to arrest her daughter. It is apparent from the Offense Report that the Officers were on <u>private property</u> when they informed Mrs. Valadez she was "under arrest for Disorderly Conduct (By using foul or vulgar language in public). Both Officers, according to the report, "pursued Mrs. Valadez into the residence" of her mother despite the absence of a warrant or any legal justification to do so in the absence of a warrant. Mrs. Carrizales, in the door way of her own home, tried to protect her daughter from the assaulting officers. Officer Andrew De Leon threatened to arrest Mrs. Carrizales for "Interfering with Public Duties". Mrs. Carrizales "kept asking why her daughter was being arrested." The Offense Report indicated that Officer Andrew De Leon "told her why her daughter was being arrested" but the report does not state what offense authorized an arrest under these circumstances. "Mrs. Valadez was escorted to the patrol car" according to the report. The report does not indicate whether the escort entailed the application of handcuffs. Once seated in the back of the patrol car, Officer Brenda De Leon purportedly "asked Mrs. Valadez for her full name and date of birth." According to the report the information was not forthcoming at which point Officer Brenda De Leon informed Mrs. Valadez that "she was also being placed under arrest for Failure to Identify to a Peace Officer." The Officers left Mrs. Valadez in the patrol car and went back to the residence and, according to the report, "stood at the doorway and kept telling her [Mrs. Carrizales] to get off the phone so we could finish our investigation and leave." The Officers described Mrs. Carrizales and Mrs. Valadez' sister, Alma Avila (who had been the first to encounter the Officers and was in the midst of these proceedings throughout) as "being very uncooperative." During this time Deputy Valadez from the Duval County Sheriff's Office "drove up to assist."

4

According to the report Mrs. Valadez was then transported to the Duval County Sheriff's Department and "upon arrival at the jail, Mrs. Valadez was issued citations for Disorderly Conduct-By Language and Failure to ID." Officer De Leon indicates that she "advised Mrs. Valadez that a report would be taken and turned over to the District Attorney on all other charges." The report concludes that "Mrs. Valadez signed her citations and was released to her mother."

The report lists the Offenses as Burglary of Habitation, Criminal Mischief, Escape and Resisting Arrest. In the box which indicates whether the "suspect" had been "ARRESTED:", Officer Brenda De Leon answered "No."

IV.

The City of San Diego has a policy, custom or usage of conscious indifference to the federally protected rights of its citizens under the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. Specifically, that policy is to consciously disregard the rights of its citizens to be free from unlawful arrests, searches, seizures and to avail themselves of their right to speak and question unlawful authority. The laws are not applied equally in that citizens of San Diego who exercise their First Amendment rights to question unlawful authority are subject to unlawful arrest by police officers who routinely fabricate multiple criminal offenses which they know or should know are defective because one or more of the elements of an offense have no factual basis.

More specifically, there is a policy, custom or usage of fabricating criminal offenses against "suspects" who exercise their constitutional right to verbally question unlawful authority. Specifically, the policy is to fabricate a pretextual array of charges against a "suspect" who is vocal in asserting her right to be free not only from an unlawful arrest but to know why she is being arrested.

5

Furthermore, the City of San Diego has a policy, custom or usage of inadequately training its police officers.  Specifically, inadequate emphasis is given in the training of its officers to the basic concepts of when an arrest may be made without a warrant, the difference between a civil dispute and a criminal offense, as well as the necessity of determining that all the elements of a criminal offense have a factual basis before an arrest is made.  The training of the police officers is inadequate because conscious disregard for the importance of teaching that all elements of an offense must be met before there is an offense have led directly to the current custom where police officers pretextually refer to any offense which comes to mind in an attempt to make a "suspect" who is innocent (but assertive) appear to be guilty of multiple offenses.  The failure to adequately train on when an officer may arrest a suspect without a warrant leads, as in this case, to the fabrication of felony charges.  Mrs. Valadez was charged with burglarizing her own home in a ludicrous attempt to justify a warrantless arrest.

The City of San Diego has a policy, custom or usage of inadequate supervision of its police officers for the reason that they are not disciplined, reprimanded or even counseled for engaging in this custom of fabricating an array of criminal charges without a factual basis for all the elements of the offense.

The City of San Diego has a policy of negligent hiring in that it hires only those officers who are anxious to wield the trappings of authority but who lack respect for the rule of law.  This practice is widespread and pervasive.  It explains how unlawful arrests can be made without warrants, homes invaded under color of law and parties to civil disputes handcuffed and transported to jail: with no consequences to the police officers engaged in this conduct.

The City of San Diego has a concomitant policy of authorizing excessive force in making arrests for the reason that there is a high degree of awareness that citizens who know they are

6

innocent of any criminal offense and appropriately question unlawful authority are not likely to be passive.

These policies and customs are so widespread and pervasive within the City of San Diego that the policymaking authorities have either actual knowledge of them or must strain daily to maintain their ignorance.

These policies are in violation of 42 U.S.C. 1983.

## V.

As a direct and proximate result of Defendant CITY OF SAN DIEGO'S policies and customs specifically enumerated hereinabove, their negligence and indifference in allowing them to become pervasive, and the constitutional deprivations which necessarily result, Plaintiffs have endured and in reasonable probability will continue in the future to endure physical pain, shame, embarrassment, humiliation, mental pain and anguish.

Plaintiffs therefore claim general damages in a sum in excess of the minimum jurisdictional limits of the court.

## VI.

Defendant, CITY OF SAN DIEGO's policies complained of herein are malicious and in conscious indifference to its citizens federally protected rights to be free from unlawful arrest, excessive force, official oppression and the unlawful invasion of their homes.

Plaintiffs therefore sue for punitive damages in an amount to be determined by the jury.

## VII.

OFFICERS BRENDA AND ANDREW DE LEON knew or should have known that their search of Mrs. Carrizales home was unlawful, that their arrest of Mrs. Valadez was unlawful and assaultive, that the force used to arrest her was unwarranted, excessive and assaultive, and that the

criminal offenses for which she was charged did not have factual basis, and that their invasion of this home placed everyone within in fear of imminent offensive physical contact.

Their conduct was assaultive, intrusive, extreme and outrageous.

VIII.

As a direct and proximate result of the conduct of OFFICERS BRENDA AND ANDREW DE LEON Plaintiffs have endured and in reasonable probability will continue in the future to endure physical pain, shame, embarrassment, humiliation, mental pain and anguish. Plaintiffs therefore claim general damages in a sum in excess of the minimum jurisdictional limits of the court.

IX.

The conduct of these officers was consciously indifferent to the rights of these citizens to be free from unlawful, assaultive and oppressive conduct from "peace officers". The conduct of these officers was deliberate and malicious. Plaintiffs therefore sue for punitive damages in an amount to be determined by the jury.

WHEREFORE, Plaintiffs request that all Defendants be cited to appear and answer, and that on final trial Plaintiffs have:

1.      Judgment for actual damages in an amount in excess of the minimum jurisdictional limits of the Court jointly and severally against all Defendants herein.

2.      Judgment against all Defendants herein for pre-judgment interest on the amounts awarded as accrued actual damages at the highest legal rate thereon to the date of judgment.

3.      Punitive damages in an amount in excess of the minimum jurisdictional limits of the Court jointly and severally against all Defendants herein.

4.      Interest after judgment at the highest legal rate thereon.

5.      Costs of Suit.

6.      Such other and further relief to which Plaintiffs may show themselves to be

justly entitled.

                        Respectfully submitted,

                        GRAY P. SCOGGINS
                        Attorney at Law
                        113 N. Reynolds
                        Alice, Texas 78332
                        (361) 668-3536: Telephone
                        (361) 668-3576: Facsimile

By:_____
                        Gray P. Scoggins
                        State Bar No.:00798494
                        Federal Id No.: 22125
                        Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument was served upon

James F. McKibben, Jr., Attorney at Law at One Shoreline Plaza, 800 N. Shoreline Blvd., Suite 2000

North Tower, Corpus Christi, Texas 78401 in accordance with the Federal Rules of Civil Procedure.

SIGNED this 19th day of April, 2000.

Gray P. Scoggins